IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

HANOVER AMERICAN INSURANCE )
CO. and MASSACHUSETTS BAY )
INSURANCE CO., )
                                                    )
         Plaintiffs, )
vs. ) NO. CIV-14-0726-HE
                                                    )
MARK WHITE and LORI WHITE, )
                                                    )
         Defendants. )

## **ORDER**

Hanover American Insurance Company ("Hanover") and Massachusetts Bay Insurance Company ("Massachusetts Bay") filed this declaratory judgment action against their insureds, Mark and Lori White. Hanover and Massachusetts Bay each issued the Whites insurance policies on separate properties the Whites owned. Mr. White has been sued in state court by the estate of Virgil Bricker, an individual who allegedly died from injuries inflicted by a bull belonging to Mr. White. Hanover and Massachusetts Bay seek a declaration that they have no duty to defend or indemnify either insured with respect to the incident involving Mr. Bricker and the bull.

The case was tried to the court on July 20, 2015. Having considered the witnesses' testimony and the parties' exhibits in light of the applicable law, the court makes the following findings of fact[1] and conclusions of law.

Hanover issued the Whites a homeowners' insurance policy on their residence and

---

[1]The parties stipulated to most of the facts. Final Pretrial Report, Doc. #23.

Massachusetts Bay issued them a dwelling policy on another property (the "MacArthur property") they owned. Both properties are in Shawnee, Oklahoma and the policies were effective from February 12, 2012, to February 12, 2013.

The bull that escaped and allegedly injured Mr. Bricker was kept on another piece of property located in Seminole County ("Seminole property"). It is owned by C & J Trucks ("C & J"), an oilfield service company. While Mr. White's primary business is Air Flite, Inc., an aviation related rental and repair business, he is also the vice-president and co-owner of C & J with his father. There are two barns on the Seminole property, which consists of approximately 150 fenced acres. It is not physically adjacent to either plaintiffs' residence or the MacArthur property. C & J stores equipment on the premises and Mr. White kept the bull there, along with approximately 50 head of cattle. Mr. White bought the bull sometime before 2008, specifically to breed cows so he would have calves to raise. Calves suitable for team roping were kept for that purpose and the others were sold. Mr. White team ropes approximately once a month with friends. A C & J employee, Gary Mize, is responsible for caring for the cattle on the Seminole land, for feeding and worming them, along with giving them their shots and mineral supplements. He obtains supplies for the cattle from a feed store and charges them to C & J's account.

Mr. White sells cattle every year. Sales are reported on Schedule F of the Whites' personal income tax returns, and expenses associated with the cattle, including feed and veterinarian bills, are taken as deductions. In 2011 the Whites filed a Schedule F with their federal tax return, in which they claimed cattle-related expenses (supplies, feed, veterinary,

breeding, and medicine) and reported/deducted a loss of $12,307.00. The next year, in 2012, they again claimed cattle-related expenses (depreciation, feed, and supplies) and reported/deducted a loss of $11,263.00.

The Whites have a separate farm account, which is used in part to pay expenses associated with the cattle. Air Flite employs a person whose job duties include keeping track of the separate checking account. Maintaining the separate account makes it easier for the Whites to do their taxes at the end of the year.

Mr. Bricker's estate sued Mr. White and others in state court in September 2014, claiming the bull escaped from the Seminole property onto Mr. Bricker's property. The estate alleges the bull attacked Mr. Bricker and he died as a result of the injuries.

The insurance policies Hanover and Massachusetts Bay issued the Whites include identical exclusions for bodily injury "[a]rising out of or in connection with a 'business' engaged in by an 'insured.'" Exhibit 1, p. 16; Exhibit 2, p. 26. Both policies define the term "business" to "include[] trade, profession or occupation." *Id*. at pp. 5, 25. Hanover and Massachusetts Bay contend they have no duty to defend or indemnify the Whites with respect to the incident involving Mr. Bricker because the Whites' cattle operation fell within each policy's business exclusion.[2] The Whites deny they were engaged in a business. They claim Mr. White pursued team calf roping as a hobby, so the business exclusions in the policies do not apply.

---

[2]*This is the sole basis urged by plaintiffs. They have not relied on the incident with Mr. Bricker having occurred on a premises other than an insured location.*

3

All parties agree that Oklahoma law applies to the resolution of this dispute. In Oklahoma, "[a]n insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla.1991). "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla.1974). If they are unambiguous, clear and consistent, the policy terms are construed in their plain and ordinary sense. Dodson, 812 P.2d at 376.

The parties assert that the policy language is unambiguous and the court agrees. *See generally* Am. Commerce Ins. Co. v. Few, 2010 WL 2595860, at *5 (N.D. Okla. June 24, 2010) ("The fact that it may be difficult, in a particular case, to determine whether an activity falls within [a policy's business] exclusion does not render that exclusion ambiguous."). A similar phrase, "arising out of business pursuits," has been interpreted by the Oklahoma Supreme Court in Wiley and the Tenth Circuit in Grain Dealers Mut. Ins. Co. v. Farmers Alliance Mut. Ins. Co., 298 F.3d 1178 (10th Cir. 2002). The parties do not argue that the difference in policy language – "arising out of business pursuits" versus "arising out of or in connection with a business engaged in by an insured" – has any legal significance. The court does not find that the distinction affects its analysis.

In Wiley the Oklahoma Supreme Court held that a homeowner, "by breeding, raising and selling St. Bernard puppies was engaged in a business pursuit under the homeowner's

4

policy." Wiley, 534 P.2d at 1294. The court rejected the argument that the dog operation could not be considered a business pursuit because the insured, who had another full time job, was engaged in the dog breeding business only part-time. The court also rejected the argument that a hobby could not be a business pursuit, stating: "Insurer in its brief says the addition of profit motive is all that is necessary to make an activity both a hobby and a business pursuit. We agree." *Id*. at 1295. The court focused on profit motive, not profit, saying: "Whether there is or is not actual profit is immaterial." *Id.*

The Tenth Circuit followed Wiley in Grain Dealers, stating that: "The rule of law announced in Wiley in construing the phrase 'arising out of business pursuits,' the very clause we interpret here, is that profit motive, not actual profit, makes a pursuit a business pursuit. The rule serves as the major premise of the categorical deductive syllogism that we must follow here." Grain Dealers, 298 F.3d at 1184.

Here, the evidence established that profit was a part of what motivated the White's cattle operation. Mr. White testified that, while his sales of cattle were not sufficient to generate a profit for him ordinarily, there have been years when the cattle operation made a profit. Further, the Whites treated the cattle operation as a business for tax purposes, which strongly suggests a profit motive.[3] They included Schedule F's with both their 2011 and 2012 tax returns. *See* Plaintiffs' Exhibit 7. Schedule F, titled "Profit or Loss From

---

[3]*The tax forms, while not conclusive, are nonetheless significant evidence as to the nature of defendants' activity. See generally* Bailey v. Farmers Ins. Co., Inc., *137 P.3d 1260, 1263 (Okla.Civ.App. 1006) ("Likewise, Plaintiffs' conduct to minimize their taxes [by taking business deductions on their federal tax returns] is merely one factor that may be examined in determining whether an activity is a business.").*

5

Farming," is used to report farm income and expenses.[4] While the Whites did not make a profit from their cattle operation in either 2011 or 2012, the tax treatment they chose was designed to permit them to derive a tax benefit from those losses. Mr. White testified the loss would have reduced his and his wife's gross and taxable income. The offset or potential offset of those losses against other business income—potentially making their other business interests or activities more profitable—suggests a profit motive.

There are other indications in the evidence, apart from the "profit" focus, which suggest the cattle operation should be viewed as a business under the policies. The recitations in the Schedule F forms filed so indicate, as the Whites attested that they "materially participate[d] in the operation of [the] business," *id.* (emphasis added). In several respects, they conducted the operation more like a business than like a hobby, in that they kept detailed financial records for the activity and kept those records and accounts separate from other personal and business pursuits. They also hired others to assist in keeping the records and in conducting the operations. None of those facts are necessarily inconsistent with a hobby, but, taken together, suggest a business rather than a hobby.

The court fully credits Mr. White's testimony, which it found to be generally credible and straightforward, that he considered his cattle activities to be a hobby. However, in light of the evidence establishing that profit was at least a significant part of the motivation for the

---

[4]*Another reporting option was available to the Whites under the Internal Revenue Code, but was not used. Under it, individuals with hobbies – "[a]ctivities not engaged in for profit" – may deduct expenses up to the amount of gross income derived from the hobby. See 26 U.S.C. § 183.*

activity and the manner in which it was conducted, the activity was not purely a hobby. Under Wiley, the addition of a significant profit motive to what was otherwise a hobby is sufficient to make the activity a "business" for present purposes.[5]

Accordingly, the court finds in favor of plaintiffs Hanover American Insurance Company and Massachusetts Bay Insurance Company and against defendants Mark and Lori White, and concludes the plaintiffs do not owe a duty to defend or indemnify defendants as to the claims asserted by the Estate of Virgil Bricker in Case No. CJ-2014-78, Seminole County District Court or arising out of the Bricker accident.

**IT IS SO ORDERED**.

Dated this 3rd day of August, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[5]*There may well be situations where the "profit" motive is so minor, or the connection to profit so attenuated or theoretical, that a different conclusion would follow. And it is true that this case presents a closer question than the circumstances in Grain Dealers, for example, where the activity in question generated over $200,000 in revenues. However, the amounts involved here (deductions taken of approximately $11,000 and $12,000 in two successive years) is certainly more than de minimis and, the court concludes, significant for present purposes.*